CIRCUIT COURT FOR CLACKAMAS COUNTY, MARCH TERM, 1869.

## JOSEPH HEDGES AND J. K. BINGHAM v. JOSEPH PAQUETT, PETER PAQUETT, JACOB S. HUNSACKER AND THE CANEMAH LUMBERING COMPANY.

JURY IN AN EQUITY SUIT.—Stockholders of a corporation sued the directors and the corporation, charging fraud and mismanagement; a jury was empannelled to pass upon the question whether there had been gross mismanagement on the part of the directors, and on the question whether the directors had been guilty of actual fraud.

CORPORATION.—EQUITY JURISDICTION.—A court will not interfere to review or correct the proceedings of the directors of a corporation, on the

ground of fraud or mismanagement, unless there is cause for a displacement of the officers, or for a final winding up of the affairs of the corporation.

INTEREST OF DIRECTOR.—The statute contemplates that directors will sometimes act on matters where the director has an interest.

IDEM.—The rule that prohibits one from being judge in his own cause, applies so far to directors, that the decision of the interested director is not conclusive, but it is subject to be set aside if it is not equal and just, and free from any taint of fraud or partiality.

DIRECTORS, VOIDABLE ACTS OF.—Acts of a board of directors, even if voidable, on the ground of interest of members in the question, are not for that cause absolutely void. And whoever seeks to avoid them, at his own instance and suit, must show that he is injured in consequence of the act complained of.

THE plaintiffs bring this suit against Joseph Paquett, Peter Paquett, Jacob S. Hunsacker and The Canemah Lumbering Company, alleging that that company is a corporation, whose board of directors consists of three members, and that the purpose of the corporation is the manufacture and sale of lumber; that these plaintiffs and the individuals named as defendants, are stockholders owning all the stock of the corporation.

That the defendant, Hunsacker, refuses to appear as plaintiff, and is for that reason made defendant.

That the stock of said corporation consists of ten shares, of the nominal value of $500 each, of which the plaintiff, Hedges, owns two; the plaintiff, Bingham, one; the defendant, Hunsacker, one; and the said Joseph and Peter Paquett, each three shares.

That in December, 1866, the said Joseph and Peter, confederating together, and with others, to wrong and defraud the plaintiffs, obtained a majority of the stock of the corporation, and elected themselves directors thereof, and appointed the said Joseph, president, and the said Peter, secretary of the corporation; and that they have continued themselves in said offices from that time to the present, and as such officers, have from that time continued to exercise exclusive control of all the affairs of the corporation. That, although required by the by-laws to keep and render full accounts, they have not done so. That they have audited large bills in their own favor, and paid each other large

sums of money for personal services. And that they, by gross negligence and inattention to the duties of their trusts, and with intention to defraud these plaintiffs, have totally destroyed the business of the corporation, and have wasted the funds and property of the corporation, and involved the corporation in debt to a great amount, and reduced the value of the capital stock from par to a condition nearly worthless, and prevented the making of any net profits during all that time. And the plaintiffs aver that, if the affairs of said corporation had been properly managed during that time, the net profits would have been at the least $3,000, the capital stock would have been of par value in coin; and that the defendants threaten to continue to hold the exclusive control of the affairs of the corporation, and to divert the proceeds thereof from the plaintiffs and to their own advantage.

The answer denies all the allegations of mismanagement and of improper proceedings, and claims that the affairs of the corporation have been well and properly conducted.

At the October term, 1868, the court, on its own motion, directed that certain issues be submitted to a jury, and the following questions were accordingly submitted:

1st. Have the defendants, Peter Paquett and Joseph Paquett, as directors or managing agents of the Canemah Lumbering Company, been grossly negligent of their duties as such directors or agents?

2d. Have they grossly mismanaged the business of said company between December 1, 1866, and March 6, 1868?

3d. Have they within the same time been guilty of actual fraud against said company or against the plaintiffs, as stockholders?

The jury having heard the testimony, the cause was argued and submitted, but the jury failed to agree, and were discharged without a verdict.

By consent of parties, the cause was submitted to the court for final determination, upon the same testimony, together with the depositions of two accountants, who, at the request of the respective parties, had examined the books of the corporation, and were examined as experts.

*S. Huelat,* for the plaintiffs.

*Johnson & McCown,* for the defendants.

UPTON, J. filed the following opinion:

The evidence in this case fails to show that the defendants have been guilty of actual fraud.

It is shown that the business of the corporation under their management, has been unprofitable, and their management has not been such as to commend itself either for energy or business capacity; but the evidence does not show either gross negligence or 'gross mismanagement of the affairs of the corporation. It cannot be considered the province of a court to superintend the current business of corporations, with a view to measure the degree of industry, skill and shrewdness to be required of, or exercised by the directors and other officers or agents. As a consequence, a court of equity will not interfere to review or correct their proceedings, on the ground of fraud or mismanagement, unless there is cause for an absolute displacement of the officer or officers complained of, or for a final winding up of the affairs of the corporation.

The evidence shows that the defendants, Joseph and Peter Paquett, attempted to mortgage the property of the corporation, and it tends to show that the attempt was for the purpose of gaining to themselves an advantage over other creditors, and to reimburse themselves for advances they claim to have made.

It may be assumed as true, that the attempt to mortgage the property of the corporation was without authority, and that the mortgage is void. But it does not follow that the other acts of the directors, having no necessary connection with that attempt, are invalid; nor that the directors have been guilty of any actual fraud. The mortgages, if void, are so because the directors went beyond their powers and jurisdiction in attempting to execute them, and if void, they are of no force, and injure no one.

The most important question presented, relates to the exercise of the powers of the board, consisting of three

directors, by a bare majority—when acting upon matters in which one or the other of the two directors composing the majority had a direct personal interest. By the act concerning corporations, section 9, all the powers of the corporation are exercised by the board of directors, and by sec. 11, the powers vested in the directors may be exercised by a majority of them. These include the election of president and secretary, and probably the fixing their salaries, and the compensation of all other officers, agents and employees, if not determined by the by-laws. The provisions of the statute necessarily involve the idea, that the directors will vote for each other, in filling other offices; for the president must be one of their number.

It seems to be a recognized doctrine in the various states of the union, that "the relation existing between a director and the corporation is that of trustee," and it has been held as a consequence that a director can not, as such, exercise a discretion in a matter involving his own individual interest. And this has been put upon the ground that "the office of common agent infers a natural disability which *ex vi termini* imports the highest legal disability, because a law which flows from nature is paramount to all positive law."

On the authority of cases cited in *Gardner* v. *Ogden* (8 Smith, 327), it is sought to apply to this case the maxim, "*Nemo debet esse judex en propria causa!*" If the maxim is to be applied to these cases, on the ground that to do otherwise would violate a principle that is paramount to all positive law, it will render proceedings, in corporations having only three directors, exceedingly difficult, and when the directors are more numerous, it will be difficult to draw the line that separates the direct from the indirect interests of the director or even the stockholder.

When a stockholder votes for a particular set of men as directors, he has, or thinks he has, an individual interest in electing those in preference to others; but it is not necessarily a direct pecuniary interest. When, however, one of these directors votes in electing a paid president, the director knows, that if he votes for himself, he votes in favor of his own personal interest, and if against himself,

7

by voting for and assisting to elect another, he votes in a matter not only involving his own interest, but absolutely decisive of his right to the emolument of the office. I am irresistibly led to the conclusion that the law of this state contemplates that directors will sometimes act and exercise the powers of the corporation, in matters, where the interests of the individual director are not in all respects coincident with those of the corporation, and that the rule in regard to transactions by trustees should apply only so far that the decision of the interested director should not be conclusive, but subject to be reviewed and set aside, if it is not equal and just and free from any taint of fraud or partiality. In 'other words, the decisions and proceedings of such interested directors are always open to examination, and it is always incumbent on them to show that the utmost good faith has characterized their actions.

If it should be established as a rule, that every vote of a stockholder, and every vote and act of a director, given or done in a matter in which he had a personal interest not coincident with that of the corporation, should be held fraudulent and void, it would be impossible for corporations under our law to transact business, and the act concerning corporations would become impracticable.

If a strict and correct administration of the law required such a rule, the resulting inconvenience would be no excuse for disregarding the law. But is such a rule made necessary by the law of the case? I think it is not.

It is a familiar principle in equity jurisprudence that he who complains and asks relief, in addition to showing that a strict rule of law has been violated, must also show that he is injured by the violation. If he shows that a salary has been audited and paid in a manner not in strict compliance with the law, to invoke equitable relief, he must also show that no salary was due, or that too much was paid, or that in some other respect it caused injury to the complainant.

The language of the statute evidently imports that, if not prevented by the by-laws, the directors may fix their own compensation, and may pass upon other questions in which the individual director has an interest.

If the rule stated in the very impressive speech of Lord Thurlow, cited in *Gardner* v. *Ogden*, is to be deemed applicable to this subject, such provisions of the general law relating to corporations are not only unconstitutional, but they are in violation of "a law which flows from nature, and which is paramount to all positive law."

Lord Thurlow undoubtedly alludes to some such undefined or supposed doctrine as that which is so often and so flippantly mentioned in later years, under the name "The Higher Law."

It is not clear that this doctrine, so positive in its avowed effects and yet so undefined, so often mentioned and yet so little known, has any application to the matter under consideration. If there is such a rule, which renders it impossible to enact a law that permits a director to vote upon a question in which his personal interests may be involved, because such an act would be contrary to a rule that flows from nature, by the same reasoning the congress of the United States would be prohibited from fixing by law the compensation of its members. A governor would not be capable of signing an appropriation bill appropriating money for the payment of his salary. And no constitution could confer the power, for the rule, as Lord Thurlow declares, is paramount to all positive law.

When a particular application of the language of that learned jurist will lead to a conclusion so manifestly erroneous, there must be some error in the application.

I think the directors of a corporation may, under our law, by their votes select the president and other officers and agents of the corporation, and if not prevented by by-laws, may audit, and allow their own compensation. The right of election by votes of the directors, necessarily includes the volition in each director to vote for or against each candidate in cases where he has a voice. Whether *it* includes a right on the part of a director to vote for himself for an office which must or may be held by one of the directors, I will not attempt to decide, as the point in question may be placed on the less questionable ground, that such acts of the board of directors, even if voidable, are not absolutely void.

And whoever seeks to avoid them, at his own instance and suit, must show that he is injured in consequence of the act complained of.

I do not think the plaintiffs have shown direct injury growing out of the manner of selecting officers or agents, or out of the manner of auditing or allowing accounts. Nor have they shown any actual fraud, or any such gross mismanagement of the affairs of the corporation as warrants the interference of a court of equity.

An order should be entered dismissing the bill.